## DAVID O. FRAMBERS ET AL.
### v.
## D. S. RISK ET AL.

1. MONEY PAID BY MISTAKE—RULE AS TO RECOVERY—WHEN KNOWLEDGE WILL DEFEAT A RECOVERY.—If money is paid under the impression of the truth of a fact, which is untrue, it may be recovered back, however careless the party paying may have been in omitting to inquire into

the fact. But if money is intentionally paid without reference to the truth or falsity of the fact, the party paying meaning to waive all inquiry into the fact; or if believing there is a mistake he might by investigation learn the state of facts more accurately, and declines so to do, and chooses to pay the money notwithstanding, he cannot recover it back.

2. HYPOTHETICAL QUESTION.—The disagreement being as to the probable weight of a lot of hogs sold, the vendor called a witness, experienced as a farmer, and acquainted with the breed sold, and. asked this question, which was rejected by the court: "Suppose a lot of fifty head of Magee hogs weighed on an average 160 pounds at the middle of April, and then put on a fine and abundant clover pasture and kept till the middle of September following, and all the time fed all the corn, old and new, that they could eat, and also eight acres of matured oats, and well cared for and watered—what do you say such hogs with such care would gain in weight per day?" *Held*, that an answer should have been allowed, as it might have elicited evidence tending to show that the hogs were not weighed at too high a figure when sold, which was the real question at issue, there being also testimony tending to sustain the truth of the hypothesis of the question.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. J. S. LOTHROP, for appellants; that money paid with knowledge or with means of knowledge of the facts, cannot be recovered back, cited Mowatt v. Wright, 1 Wend. 359; Bisbane v. Darces, 5 Taunt. 144; Buckley v. Stuart, 1 Day, 133; Clark v. Dutcher, 9 Cow. 674; Supervisors v. Briggs, 2 Denio, 26; Marriot v. Hampton, 2 Smith's Lead. Cas. 334; Bilbie v. Lumley, 2 East, 469; Dew v. Parsons, 2 B. & A. 562; 1 Chit. 295; West v. Houston, 4 Harr. 170; First Nat. Bank v. Haight, 55 Ill. 191.

If the party paying has the means of knowledge at hand, and neglects to avail himself of them, he cannot recover: Clark v. Dutcher, 9 Cow. 681; Lucas v. Worsick, 1 M. & Rob. 293; Miles v. Duncan, 6 B. & C. 671; 9 D. & R. 731; Cox v. Prentice, 3 M. & S. 344; Gornery v. Bond, 3 M. & S. 378; West v. Houston, 4 Harr. 170.

The payment was voluntary and cannot be recovered back: Falls v. City of Cairo, 48 Ill. 404; Chicago v. Stuart, 53 Ill. 83; Stover v. Mitchell, 45 Ill. 213; Union Building Association v. Chicago, 61 Ill. 439; Jones v. Wright, 71 Ill. 61.

Mr. THOMAS J. SMITH, for appellees; that whenever one party

has obtained money of another which in equity he ought not to retain, it may be recovered back, cited Taylor v. Taylor et al. 20 Ill. 650; Duncan et al. v. Niles, 32 Ill. 532; 15 Cal. 344; 41 N. H. 185; Eddie v. Eddie, 61 Ill. 134; Bradford v. City of Chicago, 25 Ill. 411; Trumbull v. Campbell, 3 Gilm. 502; Watson v. Woolverton, 41 Ill. 242.

LACEY, J. On September, A. D. 1874, appellees sold to appellants forty-nine head of fat hogs at the agreed price of $6.75 per hundred, to be paid for on delivery. On the 14th day of September, A. D. 1874, the hogs were taken to the stock yards of the Illinois Central R. R., at Tolono, by J. A. Risk, representing appellees, and by David O. Frambers, representing appellant, to be weighed, they both believing at the time that the scales were correct. The hogs were weighed on the scales by one Morgan, a disinterested party, they both standing by, looking on. When the hogs were weighed they were found to be, by those scales, 15,120.

When the hogs were weighed, J. A. Risk claimed at once that they did not weigh that amount. Some controversy ensued about the matter. J. A. Risk requested that Frambers should go to Chicago and they would have the hogs weighed there, and he, Risk, would pay his expenses. Frambers contended that the hogs were weighed correctly, and refused to go; and thereupon J. A. Risk paid him the sum of $200 on account of the hogs. On the next day, J. A. Risk and Frambers went to Champaign to see D. L. Risk about the matter. As soon as they informed Risk of what the hogs weighed, D. L. Risk at once said that they " could not have weighed that much." The appellees then requested appellant Frambers to go to Chicago with them and see the hogs weighed, but he refused and said the hogs should not be moved till he was paid. 'Appellees claimed and testified on the trial below, that while they believed the hogs did not weigh that much they had no way of disputing it. So they paid the appellants the balance of the money, some $800, and then shipped the hogs to Chicago.

Appellant Frambers testified in addition, that when each one of the Risks raised objection to the weight of the hogs, that he

proposed to them to have the hogs weighed at Tolono, on other scales, there being other scales there; that D. L. Risk said he was too busy, and upon Frambers refusing to go to Chicago, Risk paid him the balance of the money.

The evidence shows that the appellees received the returns from Chicago, showing the hogs only weighed there 10,750 pounds; that after adding to that ten pounds each for shrinkage, there was a difference between the Tolono weights and the Chicago weights of 3,880 pounds, and appellees claimed the right to recover back the sum of $261.91 on account of mistake in the weight of the hogs. The cause having been submitted to the jury, they found a verdict for appellees for the sum of $247.81, upon which judgment was rendered. The court below overruled a motion for a new trial, and the cause was brought to this Court.

Upon the question as to whether there was really any mistake in the weight of the hogs at Tolono, there was a sharp contest, and the evidence was quite conflicting.

On the trial of the case below, appellants called as a witness John Loocks, and propounded to him this question: "Supposing a lot of fifty head of Magee hogs weighed on an average 160 pounds at the middle of April, and then put on a fine and abundant clover pasture, and kept till the middle of September following, and all the time fed all the corn, old and new, that they could eat, and also eight acres of matured oats, and well cared for and watered, what do you say such hogs, with such care, would gain in weight per day?" This question was objected to by appellee's counsel, and the objection sustained, the appellant excepting.

The witness had testified that he was acquainted with the Magee breed of hogs, and that he was a farmer and had experience in such matters. There was also evidence tending to sustain the truth of the hypothesis of the question. The refusal of the court to allow the witness to answer this question, and one of similar purport put to Frambers, which was also refused by the court, is assigned for error.

The court should have allowed the questions to have been answered; if answered they might have elicited evidence that

Frambers et al. v. Risk et al.

would have had a tendency to show that the hogs were not weighed at too high a figure at Tolono, which was directly in issue in this case. The jury should have been allowed to consider it and give it such weight as in their judgment it deserved.

On the trial below, the attorney for appellant asked the court to give the following instruction:

5. "The court instructs the jury for the defendants, that if they believe from the evidence that the plaintiffs knew before they paid the defendants for the hogs in controversy, that said hogs had been incorrectly weighed, then in such case the plaintiffs are not entitled to recover the price so paid for said hogs, or any part thereof, back from the defendants, and in such case the jury will find for the defendants."

The court refused to give the instruction as asked, but modified it by adding these words: "But this would not be so if plaintiffs only believed a mistake had been made in weighing such hogs, and that they did not certainly know that a mistake had been made." To the giving of this instruction so modified the defendants objected and excepted, and this is also assigned as error.

The instruction as originally drawn was unquestionably the law. Where payment is made with a full knowledge of the facts in the case, it can not be recovered back by the party making it. But it is laid down in the law as a general rule, that if money is paid under the impression of the truth of a fact which is untrue, it may be recovered back, however careless the party paying may have been, in omitting to use due diligence to inquire into the fact. Story on Sales, sec. 146; Kelly v. Solari, 9 M. & Wellsby, 59.

"But if money is intentionally paid without reference to the truth or falsehood of the fact, the plaintiff, meaning to waive all inquiry into it, and that the person receiving shall have the money at all events, whether the fact be true or false, the latter is certainly entitled to retain it." See case last cited, p. 59. Lord Olinger, C. B., says in the same case: "There may also be cases in which, he might by investigation learn the state of facts more accurately. If he declines to do so and chooses to pay the money notwithstanding, in that case there can be no

doubt he is equally bound." Ib. last case above cited, p. 57.

After full consideration of all the facts in this case and the law bearing thereon, we think that under the peculiar facts and circumstances, that the two last propositions of law ought to apply in this case. That is, if certain facts are proven. If the appellees believed, although they did not certainly know, that at the time the hogs were weighed at Tolono, there was a mistake in the weights, and appellants proposed to have the hogs weighed on other scales, which were in the same place and have the matter fully tested, and refused to let the hogs go without the test or the payment of the contract price according to the Tolono weights, and that appellees rather than submit to such test chose to pay the money, we think in such case the appellees ought not to be allowed to recover the money paid under such circumstances. There was evidence to show the above state of facts existed.

If the jury had found this state of facts to exist they should have found for the appellants. Upon principles of justice, if a party be about to pay money on a supposed state of facts, and he apprehends such facts do not exist and makes his objection to the payment on account of mistake, and the party about to receive the money proposes to have the matter tested and the truth ascertained, and the vendee refuses to apply the tests at hand and chooses to pay the money notwithstanding, he ought to be forever barred from recovering it back; if he refuses to correct the matter himself, having an opportunity, he ought not afterwards ask the courts to do it for him.

The modification by the court excluded such an issue as this from the jury. It told them in substance, that if money had been paid on account of mistake in the weight of the hogs, even if appellees believed but did not certainly know, that at the time of the payment there was a mistake, then they should recover.

The above modification directs a recovery even though appellees paid the money without reference to any mistake in the weights, and intended to accept the weights as a final settlement, waiving all errors. Certainly the evidence tends to prove such was the intention.

The jury should have considered this question as an important issue in the case; in determining the rights of the parties, as well as the other issues above mentioned.

For these reasons the cause is reversed and remanded.

Reversed and remanded.